**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TIFFANY SANTIAGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25 C 15064 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| PIVOTAL HOME SOLUTIONS, LLC | ) | |
| (d/b/a ONCOURSE HOME SOLUTIONS), | ) | |
| MARLO GAAL, SHANTE WILLIAMS, | ) | |
| COLLEEN GARRITY, and | ) | |
| ELERY MURPHY, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Tiffany Santiago filed this action against her former employer, Pivotal Home Solutions, LLC (d/b/a Oncourse Home Solutions) ("Oncourse"); executives Marlo Gaal, Shante Williams, and Colleen Garrity; and co-worker Elery Murphy, alleging hostile work environment, sex and disability discrimination, retaliation, failure to accommodate, and gender-based violence based on a series of interactions with Murphy. Gaal, Williams, and Garrity (collectively, the "Individual Defendants") now move to dismiss the claims asserted against them for violations of the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/2-101, and the Illinois Gender Violence Act ("IGVA"), 740 Ill. Comp. Stat. 82/5. The IHRA does not allow Santiago to hold the Individual Defendants individually liable for sexual harassment or retaliation under the circumstances of this case, so the Court grants the motion to dismiss the IHRA claims (Counts VII and Count IX). But because Santiago has sufficiently pleaded that the Individual Defendants encouraged or assisted acts of gender-based violence, the Court denies the motion to dismiss the IGVA claim (Count XI).

**BACKGROUND[1]**

Tiffany Santiago worked at Oncourse as an executive assistant from March 2024 until her termination on May 28, 2025.  On January 9, 2025, Santiago was cleaning up after Oncourse's New Year's event in a conference room when the facility coordinator, Elery Murphy, approached her.  Murphy sexually assaulted Santiago by pushing her into a wall, grabbing her buttocks, and pushing his fingers into her genitals through her pants.  Murphy also pressed his mouth into her neck and groaned.  Fearing for her immediate safety, Santiago pushed Murphy away and smacked him to stop the assault.

Santiago reported the assault to Talawan Unger-Jackson, the senior director of facilities and safety.  Unger-Jackson informed Santiago that Murphy's behavior was unsurprising because he had a history of engaging in similar behavior with another female employee.  Unger-Jackson further informed Santiago that she had received a report from one of Murphy's male colleagues about Murphy stating: "I want to put my balls in her mouth," referring to another female employee.  Doc. 1 ¶ 27.  Murphy had received no discipline for these actions; instead, Oncourse's chief people and diversity officer, Marlo Gaal, had secured a waiver for Murphy to be moved to Santiago's work location rather than face discipline or termination.

On March 2, 2025, Unger-Jackson reported the sexual assault to the vice president of human resources, Shante Williams.  Santiago followed up with Williams three days later, having received no response.  Williams finally met with Santiago regarding the sexual assault on March 11, 2025.  The following day, Santiago emailed Williams requesting a reasonable accommodation to work from home until the investigation was complete.  Santiago explained that she was "extremely overwhelmed and uncomfortable with Elery being here at the office"

---

[1] The Court takes the facts in the background section from Santiago's complaint and presumes them to be true for the purpose of resolving the Individual Defendants' motion to dismiss.  *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

and that her anxiety was "through the roof." Doc. 1-1 at 2. She also explained that her position "ha[d] the capability to be remote." *Id.* Williams denied this request, informing Santiago that "these types of situations occur all the time and people are expected to continue as business as usual and conduct themselves in a manner that demonstrates our core values." *Id.* at 1.

Oncourse never offered Santiago any resources or accommodations following her assault, nor did it take any action to separate Murphy from Santiago. Murphy continued to harass Santiago in the weeks following the assault, causing her to suffer a panic attack. She therefore applied for and was approved for FMLA leave due to post traumatic stress disorder ("PTSD"), anxiety, and depression. During her leave, Santiago filed a charge with the Illinois Department of Human Rights ("IDHR"), alleging hostile work environment, sex discrimination, disability discrimination, and failure to accommodate her disability.

Through counsel, Santiago reached out to Oncourse's general counsel, Colleen Garrity, to inform her of the IDHR charge. On May 14, 2025, Santiago's counsel reached out to Garrity again to request reasonable accommodations for Santiago to work from home, attaching a medical certification detailing Santiago's PTSD, depression, and anxiety. Garrity confirmed receipt of this documentation but did not otherwise substantively respond to the request. On May 27, 2025, Santiago's counsel reached out to Garrity to follow up. The following day, Oncourse terminated Santiago's employment. The Individual Defendants were all involved in the decision to terminate Santiago's employment.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in

the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### ANALYSIS

### I.     IHRA

#### A.     Hostile Work Environment / Sexual Harassment (Count VII)

Santiago first asserts an IHRA sexual harassment claim against the Individual Defendants, alleging that they "created the environment that allowed" Murphy to sexually assault Santiago and "fail[ed] to address the known threat of harassment and assault" by Murphy. Doc. 1 ¶ 111. The IHRA "prohibit[s] sexual harassment in the workplace" that is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Sanchez v. El Milagro, Inc.*, 176 F.4th 961, 968 (7th Cir. 2026) (citations omitted). Santiago seeks to hold the Individual Defendants liable for sexual harassment under two different theories of liability. First, she asserts a theory of employer liability, alleging that the Individual Defendants are liable as Santiago's employers for Murphy's assault and harassment. Doc. 1 ¶¶ 104–05, 111. Second, she alleges that the Individual Defendants can be held individually liable because their actions constituted sexual harassment in

and of themselves. *Id.* ¶ 111. The Individual Defendants now move to dismiss both theories, which the Court addresses in turn.

With respect to Santiago's employer liability theory, the Court finds that she has abandoned this theory by failing to defend it in response to the motion to dismiss. *See Watkins v. Penn*, No. 1:06CV1473, 2007 WL 2265060, at *1 (S.D. Ind. Aug. 6, 2007) ("By electing to defend only two of the counts of their complaint in response to Defendants' dismissal motion, Plaintiffs have abandoned any other theories raised in their complaint."). But even if Santiago had not abandoned this theory, the complaint does not plausibly allege that the Individual Defendants were Santiago's employers. Under the IHRA, an "employer" includes "[a]ny person employing one or more employees within Illinois during 20 or more calendar weeks within the calendar year of or preceding the alleged violation." 775 Ill. Comp. Stat. 5/2-101(B). In this case, the complaint makes clear that Oncourse—not the Individual Defendants—was Santiago's employer. Doc. 1 ¶ 14 ("At all times herein mentioned, Oncourse employed Ms. Santiago in Illinois until it terminated her on May 28, 2025 while she was on leave under the FMLA."); *id.* ¶ 16 ("Oncourse is an employer subject to suit under the IHRA and the IGVA because it is a company that employs one or more employees during at least 20 weeks within the calendar year."). No factual allegations support the proposition that the Individual Defendants were also Santiago's employers; to the contrary, the complaint alleges that the Individual Defendants were themselves employees of Oncourse. *Id.* ¶¶ 18–20.[2] Santiago therefore cannot proceed on her IHRA sexual harassment claim against the Individual Defendants to the extent that it is based on a theory of employer liability. *See Kozlowski v. Greenridge Farm, Inc.*, 338 F. Supp. 3d 828,

---

[2] While the complaint alleges that "[a]t all relevant times . . . Defendants Oncourse, Gaal, Williams, and Garrity were 'employers' as defined by the IHRA," Doc. 1 ¶ 102, this conclusory allegation is not sufficient. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth.").

5

835 (N.D. Ill. 2018) (dismissing IHRA discrimination claim against plaintiff's supervisor because the supervisor did not "qualify as an 'employer' under the IHRA's definition of that term").

Nor can Santiago maintain an IHRA sexual harassment claim against the Individual Defendants based on an individual liability theory. There is no dispute that the IHRA imposes individual liability on employees for sexual harassment only to the extent that the employees themselves engaged in sexual harassment. *See Dalton v. Sweet Honey Tea, Inc.*, No. 23 CV 01793, 2023 WL 8281524, at *2 n.2 (N.D. Ill. Nov. 30, 2023) ("[T]he IHRA generally only allows for individual liability for agents of an employer that have themselves engaged in sexual harassment."). And the IHRA defines sexual harassment as:

> any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

775 Ill. Comp. Stat. 5/2-101(E). Thus, to survive a motion to dismiss on this theory, Santiago must plausibly allege that the Individual Defendants' actions fall under this definition of sexual harassment. She has not done so.

Importantly, none of the Individual Defendants' alleged actions involved unwelcome sexual advances, requests for sexual favors, or conduct of a sexual nature. *Id.* In the complaint, Santiago alleges that Gaal "secured a waiver for Mr. Murphy to be moved to Ms. Santiago's work location rather than face discipline or discharge;" Williams met with Santiago to discuss the sexual assault and later denied her accommodation request; and Garrity received via email a courtesy copy of the IDHR charge and a renewed reasonable accommodations request from

6

Santiago's counsel.  The Individual Defendants were also all involved in the decision to terminate Santiago's employment following her IDHR charge and second request for reasonable accommodations.  While the Court does not condone these actions, it must nonetheless conclude that they do not fall into the definition of sexual harassment under the IHRA.

Santiago's arguments to the contrary are unpersuasive.  While she argues that the Individual Defendants' "behavior was so egregious that it rises to the level of sexual harassment," Doc. 32 at 7, egregiousness is not the standard for sexual harassment under the IHRA.  *See* 775 Ill. Comp. Stat. 5/2-101(E).  And while she later addresses portions of the IHRA's definition of sexual harassment, arguing that "the Individual Defendants engaged in conduct that had the purpose and effect of creating and maintaining a hostile work environment based on sex and made submission to such conduct a term or condition [of Santiago's] employment," Doc. 32 at 9, she ignores the remainder of the definition.  In particular, she never addresses or explains how the Individual Defendants' actions included "unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature."  775 Ill. Comp. Stat. 5/2-101(E).  Nor does she cite any caselaw supporting her argument that the Individual Defendants' actions amounted to sexual harassment under the IHRA.

For these reasons, the Court dismisses the IHRA sexual harassment claim against the Individual Defendants.

### B.      Retaliation (Count IX)

Santiago also asserts an IHRA retaliation claim against the Individual Defendants, alleging that they unlawfully retaliated against her for reporting Murphy's sexual assault and harassment.  The IHRA provides that "[i]t is a civil rights violation for a person, or for 2 or more persons, to conspire to" retaliate against a person who has "opposed or reported conduct that the

7

person reasonably and in good faith believes to be prohibited under [the IHRA]." 775 Ill. Comp. Stat. 5/6-101(A)(i). The Individual Defendants move to dismiss, arguing that the IHRA does not impose individual liability for retaliation claims. In response, Santiago argues the IHRA's "use of the term 'person' rather than 'employer' demonstrates that individual liability exists for retaliation claims." Doc. 32 at 10.

Although the Illinois Supreme Court has not yet addressed this issue, "Illinois state appellate courts have consistently held that the IHRA does not provide for liability against individual employees for retaliation." *Robinson v. City of Evanston*, No. 16 C 5677, 2017 WL 201374, at \*4–5 (N.D. Ill. Jan. 18, 2017) (collecting cases). In *Anderson v. Modern Metal Products*, for example, the plaintiff brought an IHRA retaliation claim against her supervisor. 305 Ill. App. 3d 91, 94 (1999). The court explained that "[i]n cases where retaliation is charged, where the action is undertaken by a company official in the name of the employer, the charge must be against the employer and not against the official personally." *Id.* at 102. And because the plaintiff did not argue that the supervisor's actions "were personally motivated or were done without the knowledge or consent of the employer," the supervisor's actions were taken in the name of the employer. *Id.* The court therefore affirmed the dismissal of the claim against the supervisor.

Similarly, in *Watkins v. Office of State Appellate Defender*, where the plaintiffs argued that the IHRA "does, in fact, provide for [individual] liability because it prohibits a 'person' from retaliating against another for filing a charge," the court disagreed, explaining that the plaintiffs' argument had been "expressly rejected" in *Anderson*. 2012 IL App (1st) 111756, ¶ 37. Like *Anderson*, the plaintiffs in *Watkins* did not "allege that [the supervisor's] alleged conduct in retaliating against [plaintiff] for filing a grievance was personally motivated or done without the

8

knowledge or consent of" their employer. *Id.* ¶ 38. For this reason, the court affirmed the dismissal of the IHRA retaliation claim against the supervisor.

This line of Illinois appellate court cases carries "great weight," and Santiago provides no compelling reason to stray from *Anderson* and *Watkins'* interpretation of the IHRA. *Commonwealth Ins. Co. v. Stone Container Corp.*, 323 F.3d 507, 509 (7th Cir. 2003) ("In the absence of such guidance from a state supreme court, federal courts give 'great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court.'"). While Santiago cites a single Illinois appellate court case that stated in dicta that plaintiffs could have brought an IHRA retaliation claim against individual defendants, Doc. 32 at 10 (citing *Anderson v. Pistner*, 148 Ill. App. 3d 616, 620 (1986)), the Court does not find that this carries the same weight as the holdings in *Anderson* and *Watkins*. *See Robinson*, 2017 WL 201374, at \*5 (dismissing *Pistner*'s statement regarding individual liability as "dicta" and the "sole exception" to Illinois state courts "consistently [holding] that the IHRA does not provide for liability against individual employees for retaliation"); *Bryant v. SPARC*, No. 22-3193, 2023 WL 3662639, at \*4 (C.D. Ill. May 25, 2023) ("[*Pistner*] did not consider whether an IHRA claim could be asserted against a non-employer" and instead "stated in dicta that, while the plaintiffs could have asserted an IHRA retaliation claim against the individual defendants, they choose not to do so"); *Kozlowski*, 338 F. Supp. 3d at 836 ("*Pistner* did not make a holding on that particular issue because the plaintiffs there 'consciously chose not to pursue' a retaliation claim.").

Thus, the Court will apply the Illinois appellate courts' interpretation of the IHRA in *Anderson* and *Watkins*. In doing so, it joins numerous federal district courts in Illinois that have

done the same. *See, e.g.*, *Wilcher v. Champaign Unit 4 Sch. Dist.*, No. 24-CV-2240, 2025 WL 4063143, at *4 (C.D. Ill. Sep. 29, 2025) (dismissing IHRA retaliation claim against individual defendants, citing "the rule uniformly followed in Illinois appellate courts that the IHRA does not allow for individual liability in retaliation cases" (citation omitted)); *Carpenter v. Olin Corp.*, No. 3:23-CV-00759, 2024 WL 1285421, at *9 (S.D. Ill. Mar. 26, 2024) (dismissing IHRA retaliation claim against individual defendants because there was "no compelling reason to interpret the IHRA differently than the Illinois appellate courts"); *Robinson*, 2017 WL 201374, at *5 (electing to "follow the rule uniformly followed in Illinois appellate courts that the IHRA does not allow for individual liability in retaliation cases" and dismissing IHRA retaliation claim asserted against human resources manager, corporate counsel, and supervisor). And because the complaint does not allege that the Individual Defendants acted outside the scope of their employment, with personal motivation, or without Oncourse's knowledge or consent, the Court dismisses the IHRA retaliation claim against the Individual Defendants.

## II.     IGVA (Count XI)

Finally, Santiago brings an IGVA claim against the Individual Defendants. The IGVA "provides victims of gender-related violence with 'a private right of action against those who personally committed the acts of gender-related violence and against those who encouraged or assisted the acts of gender-related violence.'" *Stanfield v. Cook Cnty.*, No. 10 C 6569, 2011 WL 3876955, at *2 (N.D. Ill. Sep. 1, 2011) (quoting *Doe v. Univ. of Chicago*, 404 Ill. App. 3d 1006, 1008–09 (2010)). The Individual Defendants ask the Court to dismiss this claim, arguing that Santiago does not plausibly allege that they subjected her to gender-related violence.

Santiago admits that she does not allege that the Individual Defendants personally committed any acts of gender-related violence; rather, her theory is that the Individual

Defendants encouraged or assisted Murphy's acts of gender-related violence. *Id.* Courts analyzing the "encouragement or assistance" provision of the IGVA have "frequently found knowledge plus inaction insufficient to state a claim against a supervisor or corporation under IGVA." *See, e.g.*, *Balderas v. Ill. Cent. R.R. Co.*, No. 20 C 1857, 2020 WL 5763576, at *2 (N.D. Ill. Sept. 28, 2020) ("[A] corporation's knowledge plus inaction doesn't state a claim for personally encouraging or assisting under the IGVA." (citation omitted)); *Sheaffer v. Glendale Nissan, Inc.*, No. 19 C 3899, 2020 WL 70939, at *3 (N.D. Ill. Jan. 6, 2020) (dismissing claim against employer when plaintiff "merely alleges that [the defendant] had knowledge that its employee had committed an act of gender-related violence against him and had failed to take a reasonable corrective action, not that [the employer] had personally assisted in or personally encouraged the gender-related violence, as required by the statute"); *Rosas v. Komatsu Am. Corp.*, No. 18-CV-1120, 2018 WL 3758564, at *5 (C.D. Ill. Aug. 8, 2018) ("[S]imple acquiescence and inaction cannot suffice as encouragement and assistance under the IGVA."). That said, a defendant who knows that an employee is committing repeated acts of gender-related violence and not only turns a blind eye to those actions but also promotes the perpetrator or punishes the complainants may be liable for encouraging or assisting acts of gender-related violence. *See Smith v. Rosebud Farmstand*, 909 F. Supp. 2d 1001, 1009 (N.D. Ill. 2012) (allegations that defendant "received Plaintiff's complaints of sexual harassment or assault by its managers and employees and that it took no action against these managers and employees as a result of the complaints, choosing to punish Plaintiff instead" were sufficient to state a claim); *Stanfield*, 2011 WL 3876955, at *2 ("'[E]ncouragement or assistance' includes a supervisor who allegedly knows that an employee is committing repeated acts of gender-related violence and not only turns a blind eye to those actions but also promotes that employee."); *Cruz v. Primary*

11

*Staffing, Inc.*, No. 10 C 5653, 2011 WL 1042629, at *1 (N.D. Ill. Mar. 22, 2011) (allegations that defendant "had received many complaints of sexual harassment or assault by Acosta and that it took no action against Acosta as a result of the complaints, choosing to punish the complainants instead" were sufficient to state a claim).

Here, the Court finds that Santiago has plausibly alleged that the Individual Defendants encouraged or assisted acts of gender-related violence. In particular, she alleges that the Individual Defendants knew that Murphy had sexually assaulted both her and another female employee and failed to take reasonable steps to prevent further gender-related violence.[3] While the Court agrees that this alone would not suffice to state a claim, Santiago has pleaded additional facts allowing an inference that the Individual Defendants chose to punish her for reporting the sexual assault by denying her reasonable accommodations and eventually terminating her employment. She also alleges that Gaal "secured a waiver" for Murphy to be "moved to Ms. Santiago's work location rather than face discipline or discharge" for his inappropriate sexual behavior. Doc. 1 ¶ 28. When viewed in their entirety, these allegations suffice to survive a motion to dismiss. *See Stanfield*, 2011 WL 3876955, at *2; *Cruz*, 2011 WL 1042629, at *1; *Smith*, 909 F. Supp. 2d at 1009.

The Individual Defendants nonetheless argue that Santiago "did not even reference the 'encouraging or assisting' language" in her complaint and is now attempting to "alter[] her

---

[3] While the Individual Defendants argue that "Plaintiff did not identify more than one specific act of prior misconduct by Defendant Murphy" and alleged only that "Murphy made an inappropriate sexual comment regarding another female employee," Doc. 35 at 5–6, the Court disagrees. The complaint alleges that, after Murphy sexually assaulted Santiago, she learned that he had "a history" of "similar behavior with another female employee." Doc. 1 ¶ 27. She *also* learned that Murphy had made inappropriate sexual comments about another female employee. *Id.* While the inappropriate comment is not gender-related violence under the IGVA, the "similar" sexual assault clearly is. 740 Ill. Comp. Stat. 82/5 ("Gender-related violence includes "[o]ne or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex," and "[a] physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under the laws of Illinois.").

12

allegations to fit a new theory of liability." Doc. 35 at 3. But this is unpersuasive because the Seventh Circuit has "stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *see also Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) ("And no matter the type of case (as long as Rule 9(b) is not involved), a plaintiff is not required to plead legal theories, let alone to plead facts that correspond to 'elements' of any particular claim.'"). Thus, the fact that the complaint did not explicitly clarify Santiago's legal theory or explain how the factual allegations correspond to the specific elements of her claim is not fatal at this stage of the litigation.

The Court therefore denies the motion to dismiss the IGVA claim against the Individual Defendants.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [17]. The Court dismisses Santiago's IHRA claims against the Individual Defendants (Counts VII and IX).

Dated: June 22, 2026

SARA L. ELLIS
United States District Judge